The Chancellor.
John Hall left, by Ms will, a large *76 real and personal estate to trustees, in trust to Ms son for life; and if lie should die without issue, then he gave one half to the children of "William Hall, a deceased brother, and the other half to the children of a deceased sister, Hannah Nicholson. The son of testator died without issue, and the devise over took effect. Christiana I. Osborne, the wife of Edward L. Osborne, and who with her husband are the complainants in this suit, is a granddaughter of "William Hall, deceased, and, as such, is entitled to a part of the real and personal estate so devised in trust. The real estate, after the testator’s death, was divided between the representatives of "William Hall and Hannah Nicholson, the deceased brother and sister of the testator. The real estate, after the death of testator’s son, was divided between the children of "William Hall and the children of Hannah Nicholson. Christiana was one of the children of the deceased brother. Samuel Hall, another of the children, made application to the Orphans Court of Salem county for a division of the real estate allotted to the children of "William Hall. The commissioners reported it as not susceptible of division without injury; and thereupon a sale was ordered, and was made by the commissioners, who reported the same to the court, and the net proceeds in their hands at the sum of $12,988.77. The one-fourteenth of this sum, $924.19, belongs to Mrs. Osborne. She is also entitled to the sum of $403.60, being the one twenty-eighth of the personal estate in the hands of the trustees. Jacob M. Ramsey caused to be issued out of the Supreme Court a writ of attachment against Edward L. Oshorne, the husband, and these moneys were attached in the hands of the commissioners and trustees. This bill is filed by Osborne and wife for the purpose of protecting these moneys in the hands of the commissioner and trustees against the attaching creditor. The facts I have stated are admitted by the pleadings, and present the case for the decision of the court.
This court will never permit this creditor to take the *77 fund in the hands of the commissioners, the proceeds of the real estate which Mrs. Osborne inherited from her father, to pay the debt of her husband. The property came to the wife in the shape of land; and all the right the husband had in it, cither legal or equitable, was a joint life estate with his wife, if they had no issue capable of inheriting, or if they had such issue, then an estate for his own life, as tenant by the curtesy. The act for the partition of lands was not intended by tbe legislature as a mode by which the real estate of' the wife, without her consent, could be converted into personalty, and placed at the disposal of the husband. It authorizes a court to order a sale, where the land cannot be divided without great prejudice to the owners of the same, and to order the moneys arising from the sale to be paid by the commissioners to the parties interested. A payment to the husband, even where the proceeds are the sole result of her land, is a good-payment. He has a legal right to receive the money. But the wife may come into a court of equity, and ask its aid; and if she invokes the jurisdiction of a court of equity, it will interfere, and protect her interest in the fund. She has an equitable claim upon the money; and this court, upon the well established principles upon which it has always acted in protecting the rights of married women, will 'enforce and protect her rights against the husband, his assignee, or his creditor. It is true the process of sale has changed the legal character of the property; but this fact cannot prevent a court of equity from following and protecting the rights of the wife in the property, whatever shape it may assume. If it. had been one of the objects of the legislature, by the operation of this act, to change the character of the property, for the purpose of changing the legal rights of the parties in it, then this court could not interfere. The sole object was to provide a mode “ for the more easy partition of lands held by coparceners, joint tenants, and tenants in common,” and not to prejudice or destroy, by its *78 operation, the legal or equitable rights of the parties interested in the land. The protection of those rights are properly left with the appropriate judicial tribunal. Much emphasis was placed by counsel on the language of the statute, which directs that the moneys arising from every such sale shall be ordered by the court to be paid by the commissioners to the parties interested in the real estate so sold. If, under this language, the court would order the payment of the money, which is the produce of the wife’s interest in the land, to her husband, I cannot see in it any justification for the doctrine, that the statute has thereby placed it beyond the power of this court to protect the wife’s equity in the fund.
But it is further insisted that the husband’s interest in the fund is this: the enjoyment of that fund during the joint lives of himself and wife; that the fund representing the land, the husband’s rights in the fund are the same as they existed in the land. It is therefore insisted that the husband, being entitled to the interest of this fund during the joint lives of himself and wife, the court should order the fund invested, and the interest to be paid to the judgment creditors in attachment.
But is such an equitable interest of the husband in a fund which belongs to his wife subject to attachment? In the case of Thorn v. Wright, 4 Halst. 115 (note), and Taylor and others v. Woodward, 4 Halst. 115, the court determined that a pecuniary legacy was not the subject of attachment ; and one of the reasons the court give is, that a legacy is not a right at common law. Here is a mere trust, or equitable demand; one which can only be enforced in equity, and is not the subject of common law jurisdiction. It would seem, if there is any propriety in maintaining that a pecuniary legacy is not the subject of attachment, that the mere equitable interest which the husband has in a fund belonging to his wife is not liable to such, process.
But there is a further objection to the court’s aiding the *79 enforcement of the attachment against the fund in this way. The attaching creditors now present themselves as suitors in this court, asking its aid to protect the husband’s interest in the fund for their benefit. It is true they are brought here as defendants. It is on behalf of the wife that the protection of this court is invoked. That protection she is entitled to. The defendants were endeavoring to appropriate the whole fund to the payment of their debt. This they clearly had no right to do. They now ask what they could not have obtained, except as suitors in this court, that the fund may be protected, so that they may have that enjoyment of it to which the husband was entitled. Suppose, then, the attaching creditors had come into this court, and asked its equitable interference, and to give them the interest of this fund during the joint lives of the husband and wife, would the court have entertained such a bill ? The right of the wife to appeal to this court for a settlement in regard to her choses in action and equitable interest, and the duty of the court to enforce such settlement, cannot be denied; and it will be enforced against the husband and his assignees, where he or they are plaintiffs seeking aid and relief in equity, or where she, or her trustee, brings a suit in equity for the purpose of asserting it. 2 Story’s Eq. J. § 1414. Even if the husband had assigned this fund, the court would protect the equity of the wife in it. “ It has been long settled that the assignees in bankruptcy or insolvency of the husband, and also his assignees for the payment of debts due to his creditors generally, are bound to make a settlement upon the wife out of her choses in action, and equitable interest assigned to them, whether they are absolute interests or life interests only in her, in the same way, and to the same extent, and under the same circumstances, as he would be bound to make one; for it is a general principle, that such assignees take the property subject to all the equities which affect the bankrupt, or insolvent, or general assignor.” *80 2 Story’s Eq. J. § 1411. And a suit may be instituted against a creditor at law, and tthis equity, if the case be deemed to require it, may be extended to the whole of the real and personal estate devised or descended to the wife. Haviland v. Broom, 6 J. C. R. 181.
Here, then, is a husband who is insolvent, and a fund, the proceeds of the wife’s property, in the hands of trustees, which will yield an annual income of about $50. There is no pretence that the wife has anything else to live upon. If the court gives this income, which is all she has to meet her present necessities, to the creditors of the husband, it deprives the wife of the benefit of a legacy which was left for her maintenance and support. The fund is so small that I thixik, under all the circumstances, the-whole of it should be settled upon the wife.
The sum .of $403.60, which is in the hands of the trustees under the wfill, should also be protected by this court for the benefit of the wife. The right of the court to protect this fund for the purposes of a settlement is well established by authorities. Kenny v. Adall, 3 J. C. R. 464; Haviland v. Bloom 180; 2 Story’s Eq. J. § 1404 to § 1419, inclusive.